# Murphree *v.* Clisby.

### *Bill to Foreclose and for Subrogation.*

(Decided June 1, 1910.   52 South. 907.)

1. *Subrogation; Right to.*—One who satisfies a debt for which another is primarily liable, in order to perfect his own right, may enforce against the primary debtor  all the  securities,  benefits and advantages had by the creditor.

2. *Same.*—Where M. conveys land to J. who is insane, and who borrows money from C. to pay a part of the purchase price, and secured the same by mortgage on the premises, and M. and C. acted in entire independence of each other, and M. received no money from C. except at most a manual receipt, and the consideration for the deed moved from J. to M. and neither M. nor C. knew of the insanity of J., C. could not obtain from M. the amount of the loan to J. on the theory of subrogation.

3. *Fraud; Particular Transaction; Constructive Fraud.*—Where M. conveyed land to J. who was insane and who borrowed money from C. to pay part of the purchase price, and M. and C. acted in good faith, and in ignorance of J.'s insanity, and there was no relation of contract, trust or confidence between M. and C., then C. could not maintain a bill against M. for the amount of C.'s loan to J. on account of fraud.

APPEAL from Montgomery City Court.

Heard before Hon. WILLIAM H. THOMAS.

Bill by Mrs. F. W. R. Clisby against W. T. Jackson and others. From a decree overruling demurrers to the bill, defendant Alice Murphree appeals. Reversed and remanded.

[Murphree v. Clisby.]

The case made by the bill as originally filed was to enforce the foreclosure of a mortgage executed by W. T. and Clara Jackson to Clisby. It seems that there was decree pro confesso taken against the two Jacksons, which was afterwards set aside, and Clara Jackson answered the bill, setting up the insanity of W. T. Jackson at the time of the execution of the mortgage. Later the death of Jackson was suggested, with leave to revive against his heirs and representatives. The bill does not seem to have been revived against the heirs or representatives of W. T. Jackson, but after his death the bill was amended, so as to make the following facts the basis for relief. Immediately prior to the execution of said mortgage, the said Jackson had agreed to purchase from one Alice Henemuth the property described in the bill, and to pay therefor the sum of $1,250; and Jackson had $700, and in order to secure the additional $550 borrowed that amount from complainant. Jackson paid the sum of $700 to Alice Henemuth, and directed complainant to pay the said sum of $550, which he had borrowed from her, to the said Alice Henemuth as the balance of the purchase money, which complainant did, whereupon Alice Henemuth executed and delivered to Jackson a deed to the property, and at the same time Jackson delivered to plaintiff the mortgage here sought to be foreclosed; and the said Alice Henemuth knew, at the time she received said money from complainant on account of said Jackson, that complainant had loaned the same to Jackson, and that Jackson had borrowed the money from complainant for the purpose of paying her the balance of the purchase money; and the said Alice Henemuth knew that complainant was lending said money upon the security of the mortgage as aforesaid. It is then alleged that Alice Henemuth knew during this entire transaction that Jackson was

insane, and that since the filing of the bill Jackson had
died, leaving Clara Jackson, his wife, as his only heir,.
and that there had been no administration on his es-
tate, and that shortly after the filing of the original bill
W. T. Jackson and Clara Jackson had filed a bill in this.
court setting up the insanity of the said W. T. Jack-
son at the time of said transaction, and seeking to have
the same rescinded and the money paid the said W. T.
Jackson, which he had paid out to said Alice Hene-
muth.　It is then alleged that on account of the insanity
of Jackson the entire transaction was utterly void, and
that this complainant was entitled to have and receive
from said Jackson primarily, and from Alice Hene-
muth, now Murphree, the sum of $550 paid by complain-
ant in the manner set forth, and that she is entitled to
a lien upon the property set forth for the payment there-
of.　This is followed by an appropriate prayer for relief.
The demurrers take the point discussed in the opinion.

JOHN V. SMITH, for appellant.　The demurrers to the
bill should have been sustained.—*Letohatchie Baptist
Church v. Bullock,* 133 Ala. 548; *Walker v. Winn,* 147
Ala. 560; *Dougherty v. Pugh,* 127 Ala. 527; *Thompson
v. New England M. S. Co.,* 110 Ala. 400; *Wilkinson v.
Wilkinson,* 129 Ala. 279.　Under the pleadings, the court
could not grant the relief prayed for.—*Galloway v.
Hendon,* 131 Ala. 280; *Milligan v. Pollard,* 112 Ala.
465.　The bill is filed jointly against Clara Jackson and
Alice Murphree, and if there can be no recovery against
one there can be no recovery against the other.—*Bestor
v. Barker,* 106 Ala. 250.

BALL & SANFORD, for appellee.　Counsel discuss the
issues raised by demurrers but without citation of au-
thority.

SAYRE, J.—Appellee filed her bill to foreclose a mortgage, which had been made to her by W. T. and Clara Jackson, husband and wife, to secure the debt of the former; the wife joining merely to release her dower right. When answers were filed it appeared that the defendants would rely upon the fact that the husband was insane at the time of the execution of the mortgage to defeat foreclosure. Later the death of Jackson was suggested, and leave had to revive against his heirs and representatives. There was, however, no effort to revive; but an amendment was filed, which brought in appellant as a party defendant, and prayed that a decree be rendered against appellant for the mortgage debt, together with an attorney's fee as provided in the mortgage, and that a lien for the same be declared upon the property. As establishing appellee's right to this relief against the appellant, the amendment showed that prior to the execution of the mortgage Jackson had agreed to purchase the mortgaged property from appellant; that to piece out his own funds to the amount of the agreed purchase price he borrowed money of appellee and executed the mortgage in question to secure the same; that Jackson paid the money he had in hand to appellant, and directed appellee to pay to appellant the sum secured by the mortgage as the balance of the purchase money, which complainant did, whereupon appellant executed a deed to Jackson, and Jackson executed the mortgage to appellee; that appellant understood the purport of the entire transaction; and that Jackson was at the time insane. It does not appear that either appellant or appellee knew of Jackson's lunacy. Appellant demurred to the amended bill generally and specially, and, upon her demurrer being overruled, prosecuted this appeal.

There are a number of difficulties in appellee's position. Among them, her assertion of equity against the appellant is fundamentally unsound. She states her equity as one of subrogation in some sort. Assuming the nullity of the deed and mortgage, that the legal title to the land is still in appellant, and that Jackson's representatives are entitled to have back the money paid by him, the contention is that since appellant, with knowledge of the circumstances—not however, a knowledge of Jackson's insanity, if that would make any difference—received appellee's money, knowing that appellee, in paying it, relied upon the security of the mortgage, appellee ought to have a decree against appellant for her money and a lien upon the land. We need not concede that the efficacy of an absolute deed, without conditions, depends upon the legal capacity of the grantee to transfer an estate by deed.—*Concord Bank v. Bellis*, 10 Cush. (Mass.) 276. However that may be, the fact is that appellant received no money of the appellee—or at most the receipt was manual only. The consideration for the deed moved from Jackson to appellant. The consideration for the mortgage moved from appellee to Jackson. Appellant and appellee acted in entire independence of each other. The doctrine of subrogation is that where one, not voluntarily, but to protect his own rights, satisfies a debt for which another is primarily liable, he may enforce against the person primarily liable all the securities, and advantages held by the creditor. A statement of the case has shown that appellee is in no position to appeal to this doctrine. Appellee's contention seems rather to squint at fraud. But the bill is totally inadequate along that line. There were no relations of contract, trust, or confidence between appellant and appellee. Both acted in good faith and in ignorance of Jackson's lunacy. To permit appel-

lee to maintain her bill would be to hold her as a war-
rantor of her grantee's sanity.  It is clear that she did
not assume that burden, and there is no principle of
law by which it may be imposed upon her.  Appellant's
demurrer for want of equity should have been sus-
tained.

Reversed and remanded.

SIMPSON, ANDERSON, and McCLELLAN, JJ., concur.